CROSS, Judge.
Appellant-defendant, Hampton Utilities Company, appeals a final judgment in favor of appellees-plaintiffs, Hampton Homeowners Association, et al., in an action to invalidate an increase in sewer rates. We affirm the judgment as herein modified.
Defendant is a utilities company providing sewer service to an unincorporated area in Brevard County, Florida. In 1957, defendant executed a Trust Deed Agreement, which had the effect and purpose of guaranteeing the continued and satisfactory operation of a sewer system for the area in order to satisfy mortgage requirements. The agreement also established the rates to be charged, the procedure for changing those rates, and the procedure to be followed if residents felt the rates to be excessive.
*287 In 1967 the Florida Legislature passed ch. 67-1145 of the Laws of Florida, a special act which empowered Brevard County to regulate private sewer companies such as defendant, and to fix rates charged by such companies.[1]
In September 1969, defendant notified its sewer system users of a proposed rate increase. Several residents and the plaintiff homeowners association protested, but the rates were increased by defendant as proposed on January 1, 1970.
An action for declaratory and other relief was then instituted by plaintiffs. The thrust of the complaint was that the Trust Deed Agreement bound defendant to negotiate any proposed rate increases with its users, and to submit the question to arbitration if no agreement was reached. Defendant answered asserting that the Trust Deed Agreement had been nullified when the legislature passed ch. 67-1145, and that no negotiations or arbitration was necessary for a valid rate increase.
On July 2, 1970, ch. 70-604, Special Acts of Florida Legislature, became effective. This act gave the Florida Public Service Commission jurisdiction over all utility systems in Brevard County. Included in the Public Service Commission’s powers was the power to fix rates.
On November 4, 1970, the trial court entered final judgment for the plaintiffs wherein it was determined that ch. 67-1145 had not superseded or obviated defendant’s obligations under the Trust Deed Agreement. The trial court further determined that the rate increase was therefore invalid, and ordered defendant to cease collecting the increase and to make appropriate refunds. This appeal followed.
The primary thrust of this appeal is whether ch. 67-1145 and its successor, ch. 70-604, superseded the Trust Deed Agreement provisions for establishing sewer rates. A close reading of the provisions of these statutes convinces us that they did supersede the Trust Deed Agreement, contrary to the trial court’s determination.
The clear intent of ch. 67-1145 was to vest rate-fixing powers in the Board of County Commissioners of Brevard County. The enactment of ch. 70-604 repealed ch. 67-1145 and vested rate-fixing powers in the Florida Public Service Commission, and any arrangement to the contrary, such as the Trust Deed Agreement, purporting to vest the power in defendant subject to the terms of the agreement was necessarily superseded and abrogated by the Acts.
An analogous case is City of Plantation v. Utilities Operating Co., Fla.1963, 156 So.2d 842. The precise issue there was the constitutionality of a statute giving the state the authority to regulate utility rates in Broward County, where there was a pre-existing contract between a municipality in that county and a utility company concerning rate-setting.[2] In holding that the legislature constitutionally could and did abrogate the contract, the court stated:
“Such an agreement * * * is presumed to have been made with full knowledge of the inherent reserved power of the State to alter the contract regarding rates at such time as the Legislature deems it appropriate to assert the power under the Constitution. It also *288 follows that when the parties enter into such a contract they do so with the full realization that the contractual provisions are ineffective to preclude subsequent legislative action in the exercise of the State’s police power. * * * This continuing power cannot be interrupted or intercepted by the execution of a contract such as the one which we now consider.” 156 So.2d at 843-844.
Our determination regarding the effect of ch. 67-1145 and ch. 70-604 on the Trust Deed Agreement gives no comfort to defendant. As pointed out above, at the time of the increase the board of county commissioners was the only body authorized to set sewer rates. From the record, it appears that the increase was not authorized by either the county commission or the Florida Public Service Commission,[3] but was a unilateral act by defendant. Nothing in ch. 67-1145 authorized such a unilateral change in sewer rates, nor does ch. 70-604 contain such an authorization. The increase, therefore, was invalid.
Defendant’s other points on appeal have been considered and determined to be with-' out merit. Accordingly, the final judgment is affirmed except as herein modified.
Affirmed.
OWEN, J., concurs.
MAGER, J., concurs specially, with opinion.

. Section 2 of ch. 67-1145 stated :
“It is the purpose of this act to authorize the board of county commissioners * * * to regulate and control private utility companies. * * * ”
Section 5 set forth the powers of the commission in this regard:
“Powers: The board of county commissioners, in order to effectuate the purposes of this act, shall have the power :
« * * *
“(q) To fix rates of private utility companies, [and] define the rate base thereof * * * »

. The constitutionality of chapters 67-1145 and 70-604 is not an issue in the instant case. However, the court in Plantation, supra, made it clear that action by the legislature vesting rate fixing power in a particular body necessarily supersedes all contracts or other agreements purporting to vest such power elsewhere.

. See Miami Bridge Co. v. Miami Beach Ry. Co., 1943, 152 Fla. 458, 12 So.2d 438, for a discussion of the distinction between an administrative commission’s jurisdiction over rat e-making, and a circuit court’s jurisdiction in a case such as the one sub judice to adjudicate the validity of an existing rate.